## PITSER MILLER *v.* M. J. BIRDSONG.

1. RESULTING TRUST. *Widow. Bailment.* Where a widow has taken possession of the assets of her deceased husband's estate before the appointment of an administrator, she becomes a special bailee or trustee of the same for the use and benefit of the creditors and distributees of the estate, and if she converts the assets into other property, the personal representatives may sue for and recover such property.

   Cases cited: Hawthorne *v.* Brown, 3 Sneed, 465; Killebrew *v.* Murphy, 3 Heisk., 550.

2. SAME. *Lien. Principal and Surety. Rents.* If the widow has used the assets (notes) of the estate in partially paying for land purchased by her, and gives her note for the remainder, with security, which the endorser afterwards pays, taking from the widow a title bond of the vendor, who also executed to him a deed, the surety in such case will hold the land in trust for the benefit of the creditors and distributees of the decedent, subject to a prior lien in favor of himself to the extent of the sum paid by him, which may be set off by the rents of the land which accrued subsequent to his deed, and should the rents exceed such sum he will be liable for the excess.

3. SAME. *Inter-State law. Comity of States. Administrator. Chancery practice.* As the land in this case is lying in both the States of Mississippi and Tennessee, the Chancery Court cannot decree a sale of that portion located in Mississippi, but it may coerce the surety thus holding the land in trust, and residing in this State, to make a conveyance of the entire tract of land to an administrator of the estate, to be sold by him under the order of the court, for the benefit of the creditors and distributees of the estate, first discharging the sureties prior lien for the money paid by him in the purchase of the property.

See Treadwell *v.* McKeon, *ante,* p. 201.

---

FROM HARDEMAN.

---

Appeal from the Chancery Court. HENRY L. LIVINGSTON, Chancellor.

L. FENTRESS for complainant.

LOWE & NORMENT for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

In July, 1860, A. B. Birdsong died in Tippah county, Mississippi, leaving M. J. Birdsong, his widow, and several children. No letters of administration were taken out on his estate either in Mississippi or Tennessee until 1870, when Pitser Miller, as a creditor of N. B. Birdsong, took out letters of administration in Hardeman county, Tennessee.

In March, 1871, Miller, as administrator, filed his bill in the Chancery Court at Bolivar, against M. J. Birdsong, widow, and the several children of said Birdsong, and M. J. Newland, alleging that he was a creditor of N. B. Birdsong, and asking to reach a tract of land situated partly in Tippah county, Mississippi, and partly in Hardeman county, Tennessee, for the satisfaction of his claim. He alleged that at his death N. B. Birdsong was the owner of several notes of five hundred dollars each, made payable to him by A. Gatlin; that after his death his widow became possessed of the notes, and appropriated them in the purchase of the land in controversy, by transferring them to J. M. Park, in part payment therefor, executing her own note for about six hundred dollars, for the balance of the price of the land, and taking Park's bond for title; that Newland was her surety on the six hundred dollar note, and paid the same,

whereupon she assigned the title bond to Newland, and Park made to him a deed for the land.

Complainant prays for judgment for the amount of his claim, and for a decree that the amount of the notes so used by the widow in the purchase of the land be declared a trust thereon, and set up and enforced by a sale thereof, and for general relief.

Defendants demurred to the bill upon the ground that' the allegations of the bill do not raise a trust in his favor as administrator upon the land, but only show that the widow took the assets of the estate of N. B. Birdsong, and appropriated them for her own benefit.

The Chancellor overruled the demurrer, and the question is, whether this was error?

It appears from the allegations of the bill that M. J. Birdsong took possession of the notes and appropriated the same in the purchase of the land in controversy, for her own use and benefit, and not for the use and benefit of the creditors and distributees of the estate.

It was determined in the case of *Hawthorne* v. *Brown,* 3 Sneed, 465, that if a person standing in no fiduciary relation wrongfully obtains a portion of a trust fund, and invests the same in property for his own benefit, the title to the property vests in the purchaser, and the beneficiary of the fund will not be entitled to sue for it and recover it.

But it is well settled, and is so held in that case, that both at law and equity, if a trustee or other person standing in a fiduciary relation wrongfully con-

verts a trust fund into another species of property, the beneficiary will be entitled to the property thus acquired. In such case it is a matter entirely at the option of the beneficiary, whether to take the substituted property, or to disclaim any title thereto, and proceed upon his remedy *in personam.*

The question arises, in what capacity did the widow, M. J. Birdsong, take possession of the notes upon the death of her husband? If as trespasser or wrongdoer, the administrator cannot recover the land for which the notes were substituted, but if the notes came into her hands in a fiduciary relation, that is, either as trustee, or custodian, or special bailee for the benefit of the beneficiaries, then they may follow the land.

We are not aware of any special statute in Mississippi, as there is in Tennessee, which authorizes the widow to take possession of and hold for purposes of preservation and protection the estate of her deceased husband, prior to the appointment of the personal representative.

In the case of *Killebrew* v. *Murphy,* 3 Heis., 550, it was held that a widow appointed executrix by the will of her husband, who takes the property into her possession, and controls it before letters testamentary were granted, is not a wrongdoer, or intermeddler, but a special bailee or trustee.

This case is strictly analogous to the situation of an administratrix in Mississippi, who, by the law, is a distributee of her husband's estate, and is entitled to priority of right to administer. Upon his death, the personal property, including notes and choses in

Miller *v.* Birdsong.

action, pass legally into her possession as the proper custodian, upon whom devolves the right and the duty to preserve and take care of them, as trustee or special bailee for the use and benefit of creditors and distributees.

It follows, that standing in this fiduciary relation, M. J. Birdsong wrongfully converted the notes into the land in controversy, and that the complainant, as representative of the creditors and distributees, is entitled to sue for and recover the substituted property. There was, therefore, no error in the decree of the Chancellor overruling the demurrer.

After the demurrer was overruled, defendants M. J. Birdsong and Newland answered, and filed their answer as a cross-bill.

The allegations of the bill were admitted to be substantially true, but Newland insists on being substituted to the lien of Park, the vendor, for the amount of the six hundred dollar note, and interest, paid by him as surety of M. J. Birdsong.

The Chancellor Livingston held that as M. J. Birdsong wrongfully appropriated the three notes of the estate of M. B. Birdsong in the purchase of the land, complainant had a right to recover the land to be appropriated as assets of the estate; and as Newland paid part of the purchase money as surety of M. J. Birdsong, and took the title to the land to himself wrongfully, the Chancellor held that the land is held in trust by him as assets belonging to said estate, subject, however, to a prior lien in his favor to the amount of the purchase money paid by him as surety.

Upon a report of the Clerk and Master as to the amount paid by Newland, a decree was rendered for the sale of that portion of the land situated in Tennessee.

It is clear that the decree of the Chancellor is correct, so far as it declares that Newland holds the land in trust as assets for the payment of the debts of the estate of N. B. Birdsong, and if there is a surplus, for his distributees. He was also correct in holding that Newland was entitled to priority of satisfaction out of the land for the amount of the purchase money paid by him as surety of M. J. Birdsong. But in ascertaining this amount Newland should have been charged with the reasonable rents of the land from the time he took the title to the time of taking the account, and his priority of satisfaction should only extend to any balance due him after deducting the value of the rents. If the value of the rents should be found to exceed the amount of the purchase money and interest paid by him, complainant would be entitled to a decree for such excess.

The Chancellor decreed a sale of that portion of the land situated in Tennessee, but made no decree as to that portion in Mississippi. It is obvious that no decree could be made for the sale of the Mississippi portion of the land, but after determining that complainant was entitled to the land as assets of the estate of his intestate, and that by wrongfully taking the title thereto Newland held it in trust for the beneficiaries, the Chancellor, having acquired jurisdiction of the person of the defendant, had power to make such decree

*in personam,* as would coerce him to convey the land to complainant for the benefit of the estate.

In the notes to the case of *Penn* v. *Lord Baltimore,* 3 Lead. Cases in Eq., 498, after citing numerous English and American cases on this question, the annotations conclude as follows: " The result of the cases, as a whole, would seem to be, that as the right of real property is essentially local, and can only be enforced at law by a recourse to the local tribunals—Story's Conflict of Laws, sec. 462; 1 Smith's Leading Cases, 789; *Picket* v. *Swann,* 1 Mason, 35—equity will follow the law, and refuse to assume a power which might further the purposes of justice in particular instances, but would ultimately disturb the comity which ought to exist between the courts of different nations, by bringing the decisions of foreign tribunals into conflict with those of the *lex rei sitae:* 15 Howard, 233. But rights growing out of trust or contract, or founded on a fraudulent violation of the principles of equity, as between man and man, are purely personal, and will consequently be upheld and enforced both by law and equity, whenever jurisdiction has been acquired over the parties, without regard to the nature or situation of the property in which the controversy has its origin, and even when the relief sought consists in a decree for the conveyance of land which lies beyond the reach of the authority of the court, and can only be reached through the exercise of the powers over the person."

We are, therefore, of opinion, that upon the facts in this case, the Chancellor, who is usually very ac-

curate in his rulings, was in error in decreeing a sale of the land in Tennessee, and stopping there. He should have required Newland to convey the entire tract of land to complainant for the purposes of his trust, subject, however, to his prior lien as already indicated. The sale of the land should, then, have been decreed to be made by complainant in such manner and on such terms as would be most beneficial to the trust, and the proceeds applied, first, to the satisfaction of Newlands prior lien, when ascertained, as already stated, and then to the legitimate purposes of the administration.

The account decreed by the Chancellor against the widow for rents will be reversed, but as to her year's allowance, and her right to exempted property, the decree is affirmed, as, also, the account as to the personal property of the intestate (excluding the three Gatlin notes and the exempted property), which came into her possession and was appropriated by her.

The decree of the Chancellor will be modified as indicated, and the cause be remanded to be proceeded in as herein directed. The costs of this court will be equally divided between the complainant and the defendants.