J. G. SHUFORD v. WYNNE LOVE & CO., ET AL.

Western Section.    July 31, 1926.

No petition for Certiorari was filed.

1. **Courts.  Comity.    Conduct which amounts to conversion in another state will be given a like construction in Tennessee.**

In an action for the conversion of cotton where it was contended that the conversion took place in Arkansas and should be governed by Arkansas law, held by parity, or comity of reasoning the conduct which in Arkansas amounts to a conversion and fixes personal liability in that state, should be given a like construction and effect when made the basis of a suit in this state.

2. **Equity.    Where a court of equity has jurisdiction of the person of the defendant it will correct a wrong.**

In an action to recover for cotton where a lien was claimed under an Arkansas law, held, that regardless of whether the lien could be established or not, the court of equity having jurisdiction of the person of the defendant, who committed the wrong and the wrong being one which it is in the power of the court to correct, the court will correct it.

3. **Courts.  Jurisdiction.    There is no territorial limits to the jurisdiction of a court of equity where it has jurisdiction of the person of the defendant.**

Where the person of the defendant is within the jurisdiction of a court of equity, there is no territorial limits to the jurisdiction of the court.  Acting in personam the court is not limited by lines of states or countries.  The court can compel the defendant to convey property over which the court has no jurisdiction.  It's jurisdiction is over the conscience of the defendant.

4. **Fraud.    That defendant had no fraudulent purpose will not defeat complainant's suit if defendants action defeats complainant's rights.**

In an action to recover for cotton which had been shipped from the State of Arkansas to Tennessee and thereby defeated plaintiffs lien in Arkansas, held, that even though the defendant testified he had no fraudulent purpose in shipping the cotton to Tennessee, yet the complainant could recover because the actions of defendant did in fact defraud the complainant and defeat his rights.

Appeal in Error from Chancery Court of Shelby County; Hon. D. W. DeHaven, Judge.

Affirmed.

A. H. Murray and W. Curtis Pope, of Memphis, for appellant.
Canada, Williams & Russell, of Memphis, for appellee.

HEISKELL, J.—In 1919 the complainant, J. G. Shuford, rented to a negro tenant, Lee Ewing, certain land in Arkansas, at an agreed rental of a certain percentage of the crop raised.

During said year, as the crop was being made, complainant advanced money and supplies to the tenant to enable him to make his crop.

Ewing paid most of his rent, but in the fall owed Shuford for supplies and money furnished during the crop year the sum of $469.82,

for which Shuford was entitled to a lien on the crop by the statute of Arkansas.

The defendant, A. B. Owen, had a mortgage on nine bales of cotton upon which complainant had a lien for supplies and money furnished to Ewing to make the crop. Shuford located said nine bales at the gin of Owen, and gave Owen notice of his lien. Soon thereafter, Owen, without the knowledge or consent of complainant, shipped the nine bales of cotton to Wynne Love & Co. in Memphis.

Thereafter complainant filed his bill herein, against Wynne Love & Co., A. B. Owen and Lee Ewing setting out the foregoing facts and praying an attachment for the cotton and an injunction to restrain the factors from selling same. Both writs were granted and issued and the attachment was levied on the nine bales of cotton and Wynne Love & Co. were enjoined from selling same.

After demurrer by all defendants overruled, they answered admitting some of the allegations of the bill, but denying the indebtedness of Ewing, denying that Owen and Ewing conspired and confederated together and have fraudulently shipped said cotton from Arkansas to Tennessee, for the purpose of defrauding complainant. The answer also denies that complainant has any lien upon said cotton by virtue of the Arkansas statute.

It was conceded that Wynne Love & Co. had no interest in the cotton and by agreement the cotton was sold and the proceeds held by the said factors, to await the determination of the suit.

The chancellor decreed that complainant have and recover of the defendant A. B. Owen the sum of $377.25, the value of the cotton and that Wynne Love & Co. pay this sum, which they were holding subject to the order of the court, into the hands of the Clerk and Master, that complainant recover of defendant Lee Ewing the sum of $602.72, unpaid balance of complainant's account.

Owen appealed and assigns errors. Ewing did not appeal. The decree as to proceeds of the cotton was based upon Shuford's claim for money and supplies furnished and not for rent. It is conceded that the law of Arkansas gave complainant a lien for such furnishings superior to the mortgage of defendant Owen, and that while the cotton remained in Arkansas complainant might have attached said cotton under this statutory lien for any amount so due him.

The appellant Owen filed three assignments of error, but it is stated in brief that the sole question is whether a lien of a landlord, which existed by virtue of a statute in Arkansas will be enforced in Tennessee. In other words, there is no question as to the amount due complainant for money and supplies furnished the tenant, no question that the lien existed by virtue of the statute in Arkansas and could have been enforced there, but the contention is that the cotton

can not be reached in Tennessee in the hands of Owen and with no one else claiming it.

We find that the evidence in the record warrants the conclusion that defendant Owen, having possession of said nine bales of cotton in Arkansas, and knowing of the claim and lien of Shuford and that Shuford was asserting said lien, shipped the cotton out of the State of Arkansas to Wynne Love & Co. in Tennessee, with the intention of defeating the lien of the complainant. The Supreme Court of Arkansas has held in Sledge & Norfleet v. Hughes, 156 Ark., 481, that this amounts to a conversion and fixes personal liability upon the wrongdoer. The Arkansas Court says that if the conversion had taken place in Tennessee the effect would have been determined according to Tennessee law. By parity, or comity of reasoning the conduct which in Arkansas amounts to a conversion and fixes personal liability in that state, should be given a like construction and effect when made the basis of a suit in this state. But, however, this may be and whether it be called a conversion or not, the conduct of Owen amounted to a wrong of which a court of equity should not permit him to take the benefit.

In this case the question of the lien is not material. A court of equity has jurisdiction of the person of the defendant who committed the wrong, and the wrong is one which it is in the power of the court to correct and to correct it is a proper exercise of the power of the court. Where this is true there are no territorial limits to the jurisdiction of a court of equity. Acting in personam the court is not limited by lines of states or countries. The court can compel a defendant to convey property over which the court has no jurisdiction. Its jurisdiction is over the conscience of the defendant. So here the court cares nothing, about the lien of the complainant upon the cotton, under the law of Arkansas, except so far as the knowledge of that lien in Arkansas by the defendant in that state, and his shipping the cotton out of Arkansas, in order to defeat the rights of the complainant, constitute a wrong for which he can be held accountable by the court having jurisdiction of his person.

The chancery court, however, had not only jurisdiction of the person of the defendant, but had jurisdiction of the cotton, for at the time of the hearing, the fund, which was the proceeds of the cotton, was practically in the custody of the court, being held by Wynne Love & Co., subject to the order of the court, and no one has any claim against said proceeds except the complainant and the defendant Owen.

The case presents a totally different question from those cases, in which the cotton subject to a statutory lien in another state, comes into the hands of a defendant resident of this state, under circumstances which preclude the court from granting relief in personam against

the defendant, and where the only remedy of the complainant is by the enforcement of the lien.

The Tennessee consignee may know of the lien in the other state, but if he does nothing which in equity and good conscience enables the court to hold him personally responsible, the question of the effect of the lien in this state is determinative. But suppose the resident of Tennessee having a claim against the tenants' cotton secondary to the Arkansas landlord's lien, persuades and colludes with the tenant to secretly ship the cotton out of the state of Arkansas, in order to evade and defeat the landlord's claim. No court of equity would refuse to hold the Tennessee defendant personally liable to the Arkansas landlord, and the extra territorial effect of the lien would be immaterial, provided the court could reach the cotton in some other way.

If this defendant holding the cotton in Arkansas, subject to the complainant's lien, and knowing of that lien, had hidden the cotton there in order to defeat complainant's claim, there can be no doubt that a court of equity could compel him to divulge the whereabouts of the cotton, or hold him personally responsible. In that case it would not be necessary that an attachment should have been levied on the cotton before the concealment.

Again, it is not material that the defendant, A. B. Owen, testifies that he had no fraudulent purpose in shipping the cotton to Memphis. It is a case where actions speak louder than words. If the effect of what the defendant did would be, without the intervention of the court, to defraud the complainant and defeat his rights, the court will assist the defendant in seeing that in the absence of fraudulent purpose no fraudulent result is accomplished.

We are not without authority to support the result already indicated. 36 Corpus Juris, p. 513, sec. 1510, is as follows:

"Any person who knowingly, by purchase or otherwise deprives the landlord of the opportunity of enforcing his lien is guilty of a tort, and the landlord has a right of action for the damages sustained. And actual fraud or fraudulent intent need not be proved. . . . The law of the state where the conversion took place determines the liability therefor, and where a crop is shipped to a mortgagee thereof in another state, the conversion is deemed to have occurred in the state where the cotton was grown. The same rule applies where the tenant delivers the crop to the creditor with the understanding that the latter is to ship it for sale outside of the state, and credit the tenant's indebtedness to him with the amount of the proceeds. So, also, although delivery to a carrier for shipment to a factor in another state is not delivery to him at the point of shipment, when such factor in addition holds a mortgage upon a crop so shipped which entitles him to sell and apply the proceeds to the payment of his

mortgagee, he is liable to the landlord for a conversion in the state in which the crop was grown upon such an application of the proceeds, if he had notice of the landlord's lien. But where products are shipped to a factor in another state, a purchaser there, without connivance, is not liable to the landlord where the sale is not unlawful under the law of such a state.''

See also, Hyman v. Hibernia Bank, 139 La., 411, 89 Southern, 718.

The case of Kirk v. Bailey-Ball Pumphrey Co. clearly preserves this distinction, as appears from this:

''With a view seemingly of differentiating these authorities. counsel for complainant below insist that Mr. Ball by taking a mortgage on the crop of 1919 and stipulating that the cotton for that year should be sent to him at Memphis, was guilty of an act of conversion in Arkansas, and that the lien thereby attached to the property in his hands in Arkansas, and continued to exist when the property was removed into Tennessee. In reply to this contention, there is no evidence that Mr. Ball had any agent in Arkansas, or that he in any way was guilty of a conversion of the cotton in that state. Again, the stipulation in his mortgage could not possibly amount to a conversion, for he might well assume, that the rent had been paid before the cotton was sent to Memphis. Moreover, as he had paid to the Kirks the rent for 1918 out of the proceeds of the cotton crop for that year which had been sent to him by Hays from Arkansas, he could readily infer that the cotton left Arkansas with the consent of the landlord, as indeed it appears from the record it did. Lastly, the cotton was not consigned to Mr. Ball, but to Bailey-Ball-Pumphrey Co., which did not know of its having been shipped or of its being in Memphis until notified of its arrival by the railroad company.

These considerations all prevent the application of the principle that if a resident of one state is guilty of a conversion in the state giving the statutory lien and after such conversion brings the property into such other state, the lien may still be enforced, notwithstanding it is a statutory lien and as such has no extra-territorial effect.

Having concluded.that there is evidence in the record to justify the holding of the chancellor and the court of Civil Appeals, that that landlord consented to the removal of this cotton from Arkansas to Memphis, it becomes unnecessary to determine whether such a statutory lien should be enforced in Tennessee.''

In Millsaps v. Tate, 75 Miss., 150, 21 So. 663, cited and relied on for defendant. it is said:

''Appellees had no agency in shipping the cotton out of this state. They did not order it done. They did not know it had

been shipped at all until notified by the railroad company of its arrival. As a matter of fact, they did not know that the landlord's claim for rent had not been fully paid; and they did not know the cotton was raised on the leased premises. The trust deed is of no sort of importance as showing fraudulent participation in the removal of the cotton from this state.''

The case of Sledge & Norfleet Co. v. Hughes, 156 Ark., 481, is authority for the contention that what defendant Owen did in this case amounted to a conversion of the cotton in Arkansas. That by defeating the Arkansas landlord's lien by shipping the cotton to Tennessee, where the lien did not exist, he rendered himself personally liable, and that this result is not affected by the fact that the landlord had failed to commence an action to enforce his lien on the cotton before it was shipped out of the state.

The case of Schoenlan-Steiner Trunk Top & Veneer Co. v. Hilderbrand, 274 S. W., 544, can have no weight in the present case because there the cotton was not shipped out of the state, and nothing done by tenant or factor to prevent the landlord from enforcing such claim as he had against the cotton.

In this case it was not necessary to give the Arkansas statutory lien extra territorial effect in order to reach the proceeds of the cotton. It is true the cotton was attached in the first instance, but when defendant Owen answered and agreed for the cotton to be sold and the proceeds held subject to the order of the court the court could consider the suit one to enforce a personal liability against a defendant resident of another state, who had a fund within the jurisdiction and under the control of the court.

Appellant contends that complainant can not recover on the theory of a conversion by Owen because the question is not presented by the complainant's bill. The bill alleges the facts as set out herein and then contains this:

. . . and that the said A. B. Owen and Lee Ewing conspired and confederated together, and have fraudulently shipped said cotton into the State of Tennessee for the fraudulent and collusive purpose of defrauding this complainant of his just claim.''

In the prayer we find this:

''That at the hearing complainant be given a judgment against the said Lee Ewing and A. B. Owen for the full value of said cotton, up to the amount of complainant's claim, with interest thereon and all court costs. That complainant be given such other, further and general relief, general or special, ordinary or extraordinary, to which he may be found to be entitled at the hearing.''

This is broad enough to present the question relied on and decided.

It follows that there is no error in the decree of the chancellor. The assignments of error are overruled and case is affirmed.

Owen and Senter, JJ., concur.