CLOUSE *v.* CLOUSE *et al.*

(*Nashville*, December Term, 1947.)

Opinion filed January 16, 1948.

D. N. Hester and A. O. Denning, both of Gallatin, and A. H. Roberts, Jr., of Nashville, for appellants (defendants) O. R. Clouse, et ux. and Farmers Bank, Inc.

Luther Creasy, of Gallatin, for appellee (complainant) Alma Clouse.

Mr. Chief Justice Neil delivered the opinion of the Court.

This case grows out of the alleged failure of the chancellor to give full faith and credit to the decree of a

foreign State which undertook to adjudge title to real estate in Tennessee.

The facts upon which the Michigan decree is based may be stated briefly as follows: In 1943, Alma Clouse and Jack R. Clouse became the owners of 74 acres of land in Sumner County, holding the same as tenants by the entireties. Shortly thereafter they became separated and in November, 1943, Jack Clouse was granted an absolute divorce from his wife, Alma, in Lansing, Michigan. At that time she was confined in a hosptal for the insane and was represented by a guardian *ad litem*. The divorce was granted on grounds of cruel and inhuman treatment alleged to have been committed prior to her insanity. That part of the decree which is assailed in this suit is as follow:

"Property Settlement -

"It is also further ordered, adjudged and decreed that the said Jack R. Clouse pay to the State of Michigan, the sum of Two Hundred Fifty Dollars ($250.90) and Ninety Cents, and that this provision made for the said Alma Louise Clouse shall be in lieu of her dower in the lands of her husband, the said Jack R. Clouse, and that he shall hereafter hold his remaining lands, free, clear and discharged from any such dower rights or claims, and said provision shall also be in full satisfaction of all claims that she may have in any property which the said Jack R. Clouse owns or may hereafter own, or in which he has or may hereafter have any interest.

"It is further ordered, adjudged and decreed that the said Defendant, Ama Louise Clouse, forthwith execute a Quit-Claim Deed to the following described property, to-wit:

(Property is here described.)

and that in the event the said Defendant fails forthwith to execute said Quit-Claim Deed that this Decree may be filed in the Offices of the Register of Deeds, or an equivalent office in the aforesaid Sumner County, State of Tennessee in lieu of said Quit-Claim Deed.''

The said Alma Clouse, being *non compos mentis,* did not execute the quit-claim deed as directed in the decree and thereupon the said decree was filed for registration in the Register's Office of Sumner County, Tennessee. Following the divorce proceedings the said Jack R. Clouse executed à deed to the property, whch purported to convey all of his right, title and interest in said lands, to O. R. Clouse and wife, Ida Clouse, for the consideration of $4,500. These vendees, O. R. and Ida Clouse, next mortgaged the lands to the Farmers Bank at Portland, Tennessee.

The complainant, Alma Clouse, filed her original bill in the chancery court, in which she alleged that she is the owner of a one-half interest in the lands in question as a tenant in common with her former husband; that the decree of the Michigan court which purports to adjudge title to the lands in Tennessee was void on the ground that the property was beyond the jurisdiction of the court, and that the deed executed by Jack R. Clouse to O. R. and Ida Clouse constitutes a cloud upon her title. The prayer of the bill is that the aforesaid deeds be so declared and that the lands be sold for partition.

The defendants pleaded the validity of the decree of the Michigan court and insisted that the complainant, Alma Clouse, had no interest in the lands; that since she failed to comply with the order of the court to execute a quitclaim deed that the decree itself operated *per*

*se* as a divestiture of title. The chancellor sustained the bill and entered a decree as prayed for therein.

The opinion of the chancellor is filed with the record. He found the following undisputed facts: that at the time of the filing of the suit for divorce and the hearing the said Alma Clouse was not present and took no part therein; that "the Attorney General of the State of Michigan filed an intervening petition seeking to have Jack Clouse reimburse the State for the maintenance of the said Alma Clouse and alleged 'that she now is, and for a long period of time has been, a patient at the Travers City Hospital and unless those who are legally responsible for her support provide such support she shall continue to be a public charge'; and that it was upon this intervening petition the circuit court decreed that Jack R. Clouse pay the State of Michigan $250.00.''

The learned chancellor gave full faith and credit to the decree in so far as it granted Jack R. Clouse a divorce, but held that the court had no jurisdiction of the lands owned by the parties and located in Tennessee. The defendants excepted and were granted an appeal to this Court. There are several assignments of error but the second assignment present the only question involved in the case, as follows: "The chancellor erred in failing and refusing to give full faith and credit to the decree of the circuit court at Lansing, Michigan, as required by Article IV, Section 1, of the Constitution of the United States.''

The contention of the appellants is that the decree of the Michigan court is in and of itself a complete defense to the complainant's suit, that the court having unquestioned jurisdiction of the parties and, acting *in personam*, had jurisdiction to adjudge their rights and title to the lands in Tennessee. We are not unmindful

of the fact that a court of a foreign State, having juris-
diction of the parties, may, in a proper case, compel the
execution of a deed to lands in this State by proceedings
in the nature of attachment for contempt. But the Michi-
gan court did not elect to pursue this course. Instead it
was ordered that if the defendants "fails forthwith to
execute said Quit Claim Deed, that this decree may be
filed in the offices of the register of deeds . . . in lieu
of said Quit Claim Deed."

▮ Now the quitclaim deed of Alma Clouse would have
passed title to her interest had she been mentally capable
of executing a deed, but the court's decree could not have
any such legal effect. The complainant not having com-
plied with the order of the court (and it was known that
she was incapable of complying), the title remained in
her. The decree was an absolute nullity in so far as it
undertook to divest title out of the complainant and vest
it in her former husband upon the theory that it was *"in
lieu of,"* or a substitute for her quitclaim deed.

We are asked to give full faith and credit to the Mich-
igan divorce decree upon the theory "that it is conclusive
as to all parties *media concludendi;* that the full faith and
credit clause of the Federal Constitution requires that the
judgment of the State court which had jurisdiction of the
parties, and the subject matter in the suit, should be
given in the courts of every other State the same credit,
validity and effect which it has in the State where it
was rendered."

▮ Counsel cite many cases in support of the fore-
going proposition. We are not in disagreement with
this principle and neither was the chancellor. But we
cannot give full faith and credit to a foreign decree which
shows on its face that the court had no jurisdiction of
the subject matter, to wit, to vest and divest title to lands

located in a foreign State. Had the Michigan court entered a judgment in favor of the Travers City Hospital against Jack R. Clouse for the cost of maintenance of his insane wife there would be no question as to its validity, or the right to enforce it against his interest in the lands in Tennessee, but the court had no jurisdiction to divest title out of Alma Clouse and vest it in her husband on condition that the latter pay a sum to the hospital to save the State of Michigan harmless; and this is exactly what the decree purported to do by reciting that it was to stand on the records of this State "in lieu of the Quit Claim Deed" of the complainant. In other words, the trial court directed in his decree that it should become a valid muniment of title to lands in this State. This was clearly in excess of the court's jurisdiction.

■ We are furthermore of opinion that the decree is a fraud on its face in that it subjected the wife's lands in Tennessee to the satisfaction of a debt which was the legal obligation of her husband, thus compelling the wife to pay alimony to her husband.

It is further argued by counsel for appellants that the chancery court, acting *in personam*, "is not limited by lines of states and countries," but "its jurisdiction is over the conscience of the defendant," citing *Shuford* v. *Wynne Love & Co.*, 3 Tenn. App. 215, and *Miller* v. *Birdsong*, 66 Tenn. 531. Also that "equity regards that as done which ought to be done."

The answer to the foregoing insistence is that the first maxim has no application, the Court being without jurisdiction other than to direct the execution of a deed, etc. In no case will the Court consider anything as done which, in equity and good cause, ought not to be done. The effect of the decree here assailed is to allow the husband to acquire title to his former wife's lands, valued at over

$2,000, for the small sum of $250. The cases above cited by counsel have no application here.

Counsel for appellants earnestly insist that where the court has jurisdiction of the parties and directs the exe-cution of a conveyance such decree "may, in litigation between the parties, be pleaded as a ground of defense in the courts of the State where the land is situated." Citing 49 Am. Jur., p. 202. The rule quoted and here relied on is based upon statutes as appears from the text itself and the cases cited. There is no statute in this State which even remotely recognizes such a decree as being sufficient to pass any title or interest to real estate. Moreover, it is contrary to our own decisions and many well considered cases from other jurisdictions. Another reason for its nonapplication here is that it presupposes the existence of a legal obligation resting upon the defendant Alma Clouse to execute a deed to the property involved in this litigation.

■ The chancellor recognized the validity of the divorce and was correct in holding that following the divorce the parties became owners as tenants in common of the lands located in Tennessee. *Hopson* v. *Fowlkes*, 92 Tenn. 697, 23 S. W. 55, 23 L. R. A. 805, 36 Am. St. Rep. 120; *Bennett* v. *Hutchens*, 133 Tenn. 65, 179 S. W. 629; *Whitley* v. *Meador*, 137 Tenn. 163, 192 S. W. 718, L. R. A. 1917D, 736; *Brown* v. *Brown*, 160 Tenn. 685, 28 S. W. (2d) 350. See also Michigan Comp. Laws 1915, sec. 11436 et seq.; *Allen* v. *Allen*, 196 Mich. 292, 162 N. W. 987.

■ We think it is hardly a debatable question that the courts of a foreign State are without jurisdiction to vest and divest title to lands in this State. In *Toncray* v. *Toncray*, 123 Tenn. 476, 487, 131 S. W. 977, 979, 34 L. R. A. (N. S.), 1106, Ann. Cas. 1912C, 284, it was held

that, while the court in a foreign State may have jurisdiction to grant a decree of divorce, although the parties may reside in different Staes, "it will not be claimed that the title to land or the custody of children in one state can be settled by the decree of the courts of another." In *Cory* v. *Olmstead,* 154 Tenn. 513, 290 S. W. 31, 32, it was held "a court of one state is without jurisdiction to pass title to lands lying wholly in another state."

In a recent work on Conflict of Laws by Joseph H. Beale, Volume One, page 424, it is said:

"A refusal of the defendant to make a conveyance in obedience to a decree therefore *deprives the decree of any effect.* An appointment by the court of a master or committee to give a deed of the land after the defendant's refusal to do so, or in the absence of an order to him to do so, will not cure this defect. (Italics ours.)

"Since a court cannot affect the title to foreign land it will not construe a conveyance of such land."

The foregoing text is supported by the following cases: *Carpenter* v. *Strange,* 141 U. S. 87, 71 S. Ct. 960, 35 L. Ed. 640; *Taylor* v. *Taylor,* 192 Cal. 71, 218 P. 756, 51 A. L. R. 1074; *Carter* v. *Carter,* 283 Ill. 324, 119 N. E. 269, and other leading cases from Iowa, Missouri, Nebraska, South Carolina, Virginia, and our own case of *Cory* v. *Olmstead, supra.* See also *Fall* v. *Eastin,* 215 U. S. 1, 30 S. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.), 924, 17 Ann. Cas. 853.

The learned author makes this further pointed and appropriate comment on page 426, sec. 97.10: "In the examples heretofore considered, a conveyance has been ordered by the court in two classes of cases; *when the defendant was found to be already bound to convey and when he was found to have committed a wrong for which*

*a conveyance was a proper legal remedy.* In cases where there is neither any interest in the land nor any obligation such that a conveyance of land is a proper method of redress, no conveyance can be ordered though the court has jurisdiction over the owner." (Italics ours.)

Now in the instant case it cannot be said that Alma Clouse was in any sense bound to convey; nor had she committed any wrong to justify the decree. Regardless of any alleged wrongs giving rise to the divorce, there is no contention made that she was on that account liable to pay alimony to her husband Jack R. Clouse to the extent of her entire estate. No contention is made here that she was in any sense liable for the expense of her maintenance as a patient in the insane hospital in Michigan. It was expressly held by this Court in *Brown* v. *Brown,* 160 Tenn. 685, 688, 28 S. W. (2d) 350, 351, "there is no provision in our law for decreeing alimony to the husband upon a divorce granted to him."

We are in agreement with the learned chancellor that "no principles of *res judicata* or estoppel appear to be applicable against the complainant in this cause." Aside from what conclusively appears on the face of the decree, the record before us shows without dispute that when the divorce suit was heard the complainant was confined in an institution for mental incompetents and was unable to appear and make any defense to the charges of cruelty or take any part in the proceedings. The chancellor found "it is doubtful if she knew or understood the significance of such proceedings, and especially that she might be deprived of her interest in said land."

We think the chancellor was correct in holding that the decree of the circuit court in Michigan was wholly ineffective to pass title to the lands in question and that the complainant Alma Clouse was vested with a one-half

undivided interest therein and, as to her interest, the deeds of Jack R. Clouse, O. R. and Ida Clouse and the deed of the latter to the Farmers Bank constitute a cloud upon her title.

We therefore affirm his decree and remand the cause for further proceedings not consistent with this opinion.

All concur.