IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 29, 2015 Session

**LIBERTAD CLABORN v. BOBBY L. CLABORN**

**Appeal from the Circuit Court for Hamilton County**
**No. 14D274     Jacqueline S. Bolton, Judge**

_____

**No. E2014-01683-COA-R3-CV-FILED-SEPTEMBER 29, 2015**
_____

In 2013, Libertad Claborn (Wife) obtained a "default judgment for dissolution of marriage" from a trial court in Illinois. Wife had resided in Illinois since 2011. The Illinois court ordered the sale of the marital residence in Chattanooga and directed Bobby L. Claborn (Husband) to "cooperate fully" in the sale. The Illinois judgment also ordered Husband to pay child support and educational expenses for the parties' children. Wife properly enrolled the judgment in Tennessee and sought its enforcement. The trial court in Tennessee accorded full faith and credit to the Illinois judgment. Husband appeals, arguing that (1) the Illinois court did not have jurisdiction to order the sale of the marital residence; (2) the foreign judgment contains provisions at odds with Tennessee public policy; (3) the trial court improperly declined to transfer the matter to chancery court; and (4) the trial court entered a "default" judgment without allowing him to present defenses. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Lisa Z. Bowman, Chattanooga, Tennessee, for the appellant, Bobby L. Claborn.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellee, Libertad Claborn.

**OPINION**

**I.**

Husband and Wife were married in December 1990. They have two children, both now age 22 and both of whom have special needs. On May 25, 2011, Wife left

1

Tennessee for Illinois seeking, according to her, safety from Husband. In Illinois, Wife obtained an order of protection against him and filed for divorce in the Circuit Court of the Nineteenth Judicial Circuit of Lake County.

Husband was personally served with Wife's petition for dissolution of marriage on November 19, 2011. He made a general appearance through counsel in Illinois on May 31, 2012. He purported to withdraw his appearance on July 16, 2012. He failed to file a supplemental appearance or answer to Wife's petition. Wife moved for a default judgment. Husband was properly served with Wife's motion. Husband received notice on October 9, 2012, of the Illinois court's entry of an order of judgment against him. On February 4, 2013, the Illinois court entered a default judgment for dissolution of marriage. Among other things, that court found that

> [w]ithout any cause of provocation by [Wife], [Husband] has been guilty of acts of extreme mental cruelty and physical abuse towards [Wife]. As a result of this abuse, [Wife] was forced to flee Tennessee for Illinois to seek an order of protection barring [Husband] from contacting her or the children.

The order of protection was valid and in effect at the time the marriage was dissolved. The default divorce judgment includes the following orders:

> Any right, claim, demand or interest of the parties in and to maintenance for themselves, whether past, present or future, and in and to the property of the other, whether real, personal or mixed, of whatever kind and nature and wherever situated, . . . arising out of the marital relationship or any other relationship existing between the parties is forever barred and terminated.
>
> This Court expressly retains jurisdiction of this cause for the purpose of enforcing all the terms of this Judgment.
>
> *        *        *
>
> That the marital residence, commonly known as 2237 Peterson Drive, Chattanooga, Tennessee, shall immediately be placed on the open real estate market via a broker chosen solely by [Wife], and that [Husband] shall cooperate fully and seasonally to effect the sale of the residence. That upon the entry of the Judgment for Dissolution of Marriage [Wife] shall be entitled to record a copy of this judgment against the

2

marital residence so that it may not be disposed of or encumbered without [Wife's] knowledge and/or consent.

That upon the sale of the Marital Residence . . . the parties shall divide the net proceeds of the sale after the payment of all real estate brokers['] fees, taxes, and sale costs in the amount of fifty-five percent (55%) of the net proceeds to [Wife] and forty-five percent (45%) of the net proceeds to [Husband]. That at the time [Wife] fled Tennessee for Illinois . . . there existed no mortgage loan, home equity line of credit, or any other debts secured by the Marital Residence. . . .

* * *

[Husband] shall pay to [Wife] as and for the support of the minor child, $150.00 per week, commencing on June 7, 2011, and continuing every week until the emancipation of the child on June 30, 2013. This support amount represents a deviation from the statutory guidelines and is based on the needs of the minor child. . . .

[Husband] shall secure and maintain insurance on his life . . . in the amount of not less than $100,000.00, for the benefit of the parties' children through the children reaching the age of 25. . . .

The parties shall pay . . . the educational expenses of a college, university, or vocational school education for the children of the parties in the amount of fifty percent (50%) to be paid by [Husband] and fifty percent (50%) to be paid by [Wife].

Except as otherwise provided herein, the parties' respective obligations under this [p]aragraph . . . shall terminate upon the first to occur of the following: . . . the child's attaining the age of twenty-five (25) years;

(Lettering of paragraphs in original omitted.)

Husband continued to reside in the marital home and ignore the Illinois court's order to cooperate in the sale of the Chattanooga residence. Wife hired a Chattanooga attorney, who filed the properly authenticated Illinois judgment with the trial court on February 6, 2014, requesting that the court issue a summons to Husband as the judgment

3

debtor. The trial court complied with the request and Husband was served on February 10, 2014.

On March 11, 2014, Husband asked the court for additional time to respond. The trial court denied the request. Husband's counsel then moved to transfer the case to chancery court, stating that there was another case pending between the parties in that court. The trial court also denied this transfer request under the local rules of court, on the ground that it was untimely filed. Wife filed a motion for an order to list the marital residence for sale in accordance with the Illinois judgment.

On August 15, 2014, the trial court entered a final judgment order stating in pertinent part as follows:

> On February 6, 2014, a properly authenticated foreign judgment was filed in this Court. . . .
>
> No answer has been filed to the Foreign Judgment. Since thirty (30) days have elapsed, the Foreign Judgment may be enforced as a judgment of a court of record of this State.
>
> The Foreign Judgment must be accorded full faith and credit by this Court. Accordingly, it is ORDERED, ADJUDGED, and DECREED that the Foreign Judgment . . . is properly authenticated and enrolled as a foreign judgment pursuant to Tennessee Code Annotated § 26-6-104, and shall be granted full faith and credit by this Court. It is further
>
> ORDERED that the Motion to List Former Marital Residence is granted and the former marital residence, located at 2237 Peterson Drive, Chattanooga, Tennessee 37421 shall be listed for sale with a licensed real estate agency immediately by [Husband].

(Numbering in original omitted; capitalization in original.) Husband timely filed a notice of appeal.

II.

Husband raises the following issues for review:

> 1. Whether a Tennessee court must recognize and give full faith and credit to a foreign judgment that orders the sale of property in the state of Tennessee.

4

2. Whether the Tennessee court must recognize and give full faith and credit to a foreign judgment when doing so would violate the strong public policy of Tennessee.

3. Whether the trial court erred in refusing to transfer a domesticated judgment from the circuit court for Hamilton County, Tennessee to the chancery court of the same district, pursuant to the local rules of civil practice for the Eleventh Judicial District.

4. Whether the trial court erred when it refused to allow a hearing on the merits and to allow Husband to present defenses and summarily entered a default judgment against the Husband.

III.

"[W]hether to grant full faith and credit to a foreign judgment is a question of law. It is reviewed *de novo* upon the record with no presumption of correctness of the trial court's conclusions of law." ***Minor Miracle Prods., LLC v. Starkey***, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *4 (Tenn. Ct. App. M.S., filed Jan. 12, 2012); ***BancorpSouth Bank v. Johnson***, No. W2012-00452-COA-R3-CV, 2013 WL 3770856, at *2 (Tenn. Ct. App. W.S., filed July 16, 2013). "A party seeking to vacate a foreign judgment has a stern and heavy burden to prove the judgment should be stricken." ***Minor Miracle Prods.***, 2012 WL 112593, at *4.

IV.

A.

Husband argues that the Illinois court did not have in rem jurisdiction over the Chattanooga marital residence, and so, his argument goes, its judgment is not entitled to full faith and credit. "[I]it is hardly a debatable question that the courts of a foreign [s]tate are without jurisdiction *to vest and divest title* to lands in this State." ***Clouse v. Clouse***, 207 S.W.2d 576, 579 (Tenn. 1948) (emphasis added); *see also* ***Cory v. Olmstead***, 290 S.W. 31, 32 (Tenn. 1926) ("a court of one state is without jurisdiction to pass title to lands lying wholly in another state."); ***International Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945). Illinois also recognizes this well-established rule. ***In re Marriage of Miller***, 438 N.E.2d 939, 942 (Ill. App. Ct. 1982). But the Tennessee Supreme Court also observed in ***Clouse*** that "a court of a foreign State, having jurisdiction of the parties, may, in a proper case, compel the execution of a deed to lands in this State by proceedings in the nature of attachment for contempt." 207 S.W.2d at 578.

5

Thus, a foreign court, though lacking jurisdiction to vest or divest land in Tennessee, may compel a person over whom it has personal jurisdiction to make a conveyance of property located in another state. *Id.*; *Carpenter v. Strange*, 141 U.S. 87, 105-06 (1891) ("while, by means of its power over the person of a party, a court of equity [in a sister state] may, in a proper case, compel him to act in relation to property not within its jurisdiction, its decree does not operate directly upon the property, nor affect the title, but is made effectual through the coercion of the defendant; as, for instance, by directing a deed to be executed or canceled by or on behalf of the party"); *In re Marriage of Miller*, 438 N.E.2d at 942 ("As regards foreign real estate, a trial court, having personal jurisdiction, may order a conveyance thereof and enforce that order"); *see also generally* Sheldon R. Shapiro, Annotation, *Power of Divorce Court to Deal with Real Property Located in Another State*, 34 A.L.R.3d 962 (1970)

The Illinois court clearly had personal jurisdiction over the parties. Husband does not argue otherwise. Wife was an Illinois resident for more than ninety days, as required by state law, when she began divorce proceedings. 750 Ill. Comp. Stat. Ann. 5/401 (2015). Husband made a general appearance in the Illinois court through counsel, resulting in his waiver of any objection to personal jurisdiction. *Poplar Grove State Bank v. Powers*, 218 Ill. App. 3d 509, 578 N.E.2d 588, 593 (1991). Indeed, there is no indication he ever tried to object in Illinois on ground of lack of personal jurisdiction. In this case, the Illinois court did not attempt to *divest and vest title* to property in Tennessee. Rather, it ordered a party properly before it to cooperate in the sale of property in Tennessee. Under the above authorities, this judgment was proper, and the trial court correctly afforded it full faith and credit.

B.

Husband argues in his brief that the Illinois "judgment provisions pertaining to the support of the adult children, including college expenses and the cost of life insurance until the age of twenty-five . . . years should be held to be against public policy and void in the State of Tennessee." In *Four Seasons Gardening & Landscaping, Inc. v. Crouch*, 688 S.W.2d 439, 441-42, 445 (Tenn. Ct. App. 1984), we observed:

> Under the terms of the Uniform Enforcement of Foreign Judgments Act, the courts of this State will presume, absent proper proof to the contrary, that the decrees of the courts of record of any sister states are valid. Thus, the burden is placed on the party seeking to attack the validity of a foreign judgment to prove that it should not be given full faith and credit in this State as required by Article 4, Section 1 of the United States Constitution.

*      *      *

> Tennessee is one of those states following the rule that Article 4, Section 1 of the United States Constitution does not require that full faith and credit be given to foreign judgments when to do so would violate the strong public policy of the state in which the judgment is sought to be enforced. *See Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn. 1978) and *In re Riggs*, 612 S.W.2d 461, 465 (Tenn. App. 1980). However, the judgment of the court of another state does not necessarily violate the public policy of this State merely because the law upon which it is based is different from our law.

(Footnotes omitted.)

In the trial court, Husband elected to file only two documents: a request "for an additional period of time to properly respond to the [s]ummons served upon him which seeks to be enrolled for enforcement," and a motion to transfer the action from circuit to chancery court. Husband did not raise the issue of whether the Illinois judgment violates Tennessee public policy with the trial court. Consequently, this issue is waived on appeal. *E.g., Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996) ("Under Tennessee law, issues raised for the first time on appeal are waived."). Moreover, even if we were to address it, it is clear that, as in *Four Seasons*, Husband here,

> has been unable to point to any portion of Tennessee's Constitution, its laws, or the decisions of its courts that prohibit such relief or that reasonably can be construed to state that such relief would be against this State's public policy [and] therefore, it would not be proper to conclude that these remedies run afoul of the public policy of this state.

*Four Seasons*, 688 S.W.2d at 445.

## C.

Husband argues that, under Rule 7.01 of the local rules of the Tennessee trial court, the case should have been transferred to chancery court. Local Rule 7.01 provides in pertinent part that "[a]ny case previously filed and dismissed and then refiled will be assigned to its previously assigned Part or Division." Tenn. R. 11 Dist. Ch. Cir. Ct. 7.01 (2007). Husband filed for divorce against Wife in Hamilton County Chancery Court on October 26, 2011, and the case was concluded by March 2013. On February 6, 2014, Wife enrolled the Illinois default divorce judgment in Tennessee by filing in the trial court. Wife's action is not a "case previously filed and dismissed and then refiled" under

7

Local Rule 7.01. It is a separate cause of action. Furthermore, generally speaking, in a civil action, the decision to transfer a case is discretionary. *See Turner v. State*, 184 S.W.3d 701, 705 (Tenn. Ct. App. 2005); Tenn. Code Ann. § 16-2-107 ("In judicial districts that have a separate circuit and chancery court . . . if a civil cause of action is filed in the improper court or the improper division of court within the judicial district, upon the motion of either party, or upon the court's own motion, the civil cause of action *may* be transferred to the proper court or proper division within such district.") (emphasis added).

"A trial court abuses its discretion only where it applies an incorrect legal standard or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" *Hughes v. Henry County Med. Ctr.*, No. W2014–01973–COA–R3–CV, 2015 WL 3562733 at *3 (Tenn. Ct. App. W.S., filed June 9, 2015) (brackets and internal quotation marks omitted). Exercising its discretion, the court denied Husband's request to transfer, stating that it was untimely filed. The trial court did not abuse its discretion. Further, Husband asserts no prejudice or injustice as a result of the trial court's denial of his motion to transfer.

## D.

In its May 12, 2014 order denying Husband's motion to transfer, the trial court stated that "[t]he matter is set for a hearing on July 15, 2014." When the parties appeared for the hearing, the court granted Wife's motion to enforce the Illinois default judgment. Husband argues that he was denied an opportunity to present defenses, and characterizes the trial court's order as a "default judgment." We disagree. Husband had ample opportunity to present arguments and defenses by filing whatever pleadings he might have chosen from May 12, 2014, when he had notice that the hearing was set, until the hearing date of July 15, 2014. He filed nothing. The final judgment of the trial court does not state that it is a "default" judgment. We have observed that a "domesticated judgment has the same legal effect as one originating in Tennessee, and is governed by the same law regarding finality of judgments, subject to collateral attack for grounds set forth in Tenn. R. Civ. P. Rule 60.02, assuming the original judgment is valid." *Frazier v. Frazier*, 72 S.W.3d 333, 335 (Tenn. Ct. App. 2001) (*See* Tenn. Code Ann. § 26–6–104(c)). Husband did not file a Rule 60.02 motion. Prior to this appeal, he has only filed motions requesting additional time to respond, withdrawing and substituting counsel, and moving that the case be transferred from circuit court to chancery court. Husband's argument that "the trial court erred when it refused to allow a hearing on the merits and to allow Husband to present defenses and summarily entered a default judgment against the Husband" is entirely without merit.

8

V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Bobby L. Claborn. The case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE