Linda R. KNOBLER, Plaintiff-Appellee,

v.

Donald G. KNOBLER,
Defendant-Appellee,

v.

THIRD NATIONAL BANK IN NASH-
VILLE, Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

March 6, 1985.

Application for Permission to Appeal
Denied May 6, 1985.

Carol L. McCoy, Nashville, for plaintiff-appellee.

H. William Scott, III, Nashville, pro se.

Richard Dance, Nashville, for defendant-appellant.

## OPINION

GODDARD, Judge.

In this controversy which arose ancillary to a divorce proceeding, Third National Bank, a judgment creditor of the husband, Don Knobler, contends that because it has no offices or places of business in Williamson County, the Chancery Court for Williamson County, the forum where the divorce was tried and granted, did not have jurisdiction over its person, and even if so could not exercise authority over property located in Davidson County. It further contends that if it is mistaken as to both propositions the Court could not divest and vest property in Davidson County so as to impair its judgment lien.

The case was filed by Mrs. Knobler against Mr. Knobler on December 11, 1980. At that time the parties owned a number of parcels of property, some in Williamson County and two that are the subject of this controversy in Davidson—one known as the Belle Forest property owned by the parties as tenants by the entirety, and another on Lealand Lane owned solely by Mr. Knobler. Other facts pertinent to resolution of this appeal will be stated chronologically:

1. *July 15, 1981.* Divorce granted. Resolution of property, alimony and child support reserved.

2. *October 15, 1981.* Powers of attorney granting the parties' respective counsel the right to sell the Davidson County property, which is described in the instruments with particularity, recorded in the Register's Office for Davidson County.

3. *December 23, 1981.* Order by the Chancery Court for Williamson County directing real estate be sold.

4. *August 6, 1982.* Judgment rendered in favor of Third National Bank against Mr. Knobler in the Chancery Court for Davidson County.

5. *August 13, 1982.* Judgment against Mr. Knobler recorded in the Register's Office for Davidson County.

6. *November 18, 1982.* Complaint for discovery in aid of collection of judgment filed against Mr. and Mrs. Knobler in the Chancery Court for Davidson County bearing the same docket number as the original case of Third National Bank against Mr. Knobler.

7. *December 30, 1982.* Order by the Chancery Court for Williamson County vesting title of Davidson County property in the Clerk & Master of the Chancery Court for Williamson County.

8. *February 4, 1983.* Order entered in the Chancery Court for Davidson County directing that questions relative to the validity of the Bank's lien be determined by the Chancery Court for Williamson County.

9. *March 25, 1983.* Petition to approve sales contract as to Belle Forest property making Bank a party by show-cause order of the same date.

10. *April 20, 1983.* Agreed order approving sale of Belle Forest property and in effect transferring Bank's lien to the proceeds.

11. *December 1, 1983.* Petition to approve sales contract as to Lealand Lane property. Show-cause order issued to Bank on the same date.

12. *December 14, 1983.* Order approving sale of Lealand Lane property and transferring Bank's lien to any interest of Mr. Knobler in the proceeds of the sale.

13. *August 22, 1984.* Final order entered determining that Mr. Knobler was not entitled to share in the proceeds of the sales, and consequently Third National Bank had no claim therein and awarding Mrs. Knobler the monies held in the Clerk & Master subject to certain payments to be made, including an attorney fee of $5000 each to attorneys representing Mr. Knobler and Mrs. Knobler.

We turn now to the issues on appeal. Unquestionably, the Trial Court had jurisdiction of the divorce proceedings because both Mr. and Mrs. Knobler were citizens of Williamson County at the time the divorce action was filed. By virtue of T.C.A. 36-4-121 the Court trying the divorce case is empowered to "equitably divide, distribute or assign the marital property" and "to effectuate its decree by divesting and re-investing title to such and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties."

The Bank contends that the authority of the Chancery Court is limited by T.C.A.

16-11-114, which provides in pertinent part as follows:

*16-11-114. Venue of suits.*—The local jurisdiction of the court of chancery is also subject to the following rules:

. . . .

(2) All bills filed in any court seeking to divest or clear the title to land, or to enforce the specific execution of contracts relating to realty, or to foreclose a mortgage or deed of trust by a sale of personal property or realty, shall be filed in the county in which the land, or a material part of it, lies, or in which the deed or mortgage is registered.

There are, however, statutory exceptions to the foregoing. In partitions cases it is permissible to file a suit in a county where one tract lies and have a sale for partition of that tract as well as another tract lying in a different county. This procedure is authorized under T.C.A. 29-27-107.[1]

It seems to us, given the remedial nature of the statute authorizing division of property, it was intended by the Legislature that the Court, after determining the various rights of the parties be clothed with the authority to enforce his determination by appropriate orders as to the title of property irrespective of where located in Tennessee. Indeed, counsel for the Bank in oral argument did not seriously contend that if its interest were not involved the Court did not have jurisdiction of the property located in Davidson County.

■ We think it follows that if the Court has the authority to make a determination regarding a division of the parties' property, including that located in Davidson County, he has authority to determine the respective interest of the parties when adverse claims such as those by the Bank are asserted. This necessarily implies personal jurisdiction over the Bank, requiring it to justify its claim.

In summary, we hold that under the language of T.C.A. 36-4-121, the Court had

---

**1.** *29-27-107. Venue of actions.*—The petition may be filed in the court of the county in which the land, or any part of it lies, or in which the defendant resides. If all the claimants join in the petition, or assent to the partition, it may be filed in any county in the state, whether any of the land lies therein or not.

authority to exercise personal jurisdiction over the Bank and subject-matter jurisdiction over the real estate located in Davidson County.

As to the final point, counsel for Mrs. Knobler insisted, and the Trial Court held, that upon filing of the divorce proceedings all property owned by the parties became *in custodia legis* and was not subject to attachment, execution or a judgment lien. With all deference to counsel and the Trial Court we cannot agree.

As a general rule this doctrine contemplates property being taken into custody by a judicial official pursuant to a writ of the court. In *First National Bank of Formoso v. Livingood*, 109 P. 987, 988 (1910), the Supreme Court of Kansas said this:

> The money in question in this case was unquestionably in the custody of the law, and the officer who had the custody thereof was subject to the orders of the court. 3 A. & E. Encycl. of L. 183. 2 Words and Phrases Judicially Defined, 1801, says: "A thing is in custodia legis when it is shown that it has been and is subjected to the official custody of a judicial executive officer in pursuance of his execution of a legal writ. The officer holding such a thing cannot, after he has made his return of the writ, release it on his own motion to any one claiming title to the thing. Its status as to third parties is fixed by his return, and can be changed only by order of court. Money received by a trustee in bankruptcy from the sale of property which he has received in his official capacity, under the orders of the bankruptcy court, is in custodia legis. *McFarland Carriage Co. v. Solanes*, (C.C.) 108 Fed. 532, 536." See, also, 4 Cyc. 808, 809.

Other courts have spoken of the doctrine in a similar vein. For example: The District Court of Appeals in California in *Van Orden v. Golden West Credit & Adjustment Co.*, 122 Cal.App. 132, 9 P.2d 572, 576 (1932):

> It is the rule that property in the custody of the law is not subject to garnishment or execution except by statutory

authority (13 Cal.Jur., Garnishment, § 5, p. 5; 15 Cal.Jur., Levy and Seizure, § 20, p. 1011); but in order to constitute custodia legis the property must have been lawfully taken pursuant to legal authority (28 Cor.Jur., Garnishment, p. 67).

The Supreme Court of Missouri in *Troll v. City of St. Louis*, 168 S.W. 167, 178 (1914):

> Custodia legis involves the actual domination over some objective thing by the court. It may be corporeal or incorporeal, but it is not a controversy, a question, or an inquiry. *Rothschild v. Harsbrouck* (C.C.) 65 Fed. [283] loc. cit. 286 et seq.

Custodia legis is defined to be:

> "That custody only which an officer has the right to assume over property by virtue of legal process." 12 Cyc. p. 1025.

> It would include attached property or property actually held by a replevin writ, or property actually held by a receiver as a hand of the court, or property actually held by a general administrator and actually a part of the estate.

> "Whenever property is lawfully taken by virtue of legal process it is in the custody of the court and not otherwise." Id., note 43.

Our Supreme Court is also in accord. In *Massey v. Holmes*, 189 Tenn. 677, 680; 227 S.W.2d 25, 26 (1950), the Court said the following:

> The authors of American Jurisprudence state the rule and the reasons therefore as follows:

> "The general rule is that while property or money is in custodia. legis, the officer holding it is the mere hand of the court; his possession is the possession of the court, and to interfere therewith is to invade the jurisdiction of the court itself, an officer so situated being bound solely by the orders and judgments of the court whose mere agent he is, and having no right to make any disposition of such money or property without the consent of his own court, express or implied. Hence, in the absence of express statutory authority therefor, it is settled law that, in general, property or funds in

custodia legis are not subject either to attachment or to execution." 4 American Jurisprudence, page 795, section 386.

■ We accordingly conclude that the property was not *in custodia legis* at the time the judgment lien attached, and the earliest time it could be considered so would be December 30, 1982, when an order was entered vesting title in the Clerk & Master.[2]

Moreover, even if the doctrine were viable, in our view it does not aid Mrs. Knobler. We say this because it merely holds that once property has come within the custody of the court third parties—the cases mainly involve other courts of competent jurisdiction—have no right to interfere with the possession. *Acken v. New York Title & Mortgage Co.*, 9 F.Supp. 521 (1934). The doctrine does not preclude the Court, which has taken custody, from resolving an adverse claim. *People v. Superior Court, Orange County*, 104 Cal.Rptr. 876 (Ct.App. 1972).

■ We do not mean to say that Mrs. Knobler could not have protected her claim on the Davidson County property. Under the doctrine of *lis pendens* the recording of an abstract of the complaint—if properly drawn—[3] in the Register's Office for Davidson County is notice to the world that any interest attempted to be asserted in the property whether by lien, encumbrance, or transfer would be subject to the determination of the Chancery Court for Williamson County in the pending divorce action.

■ In reaching the foregoing conclusion we have not overlooked the fact that a power of attorney from both the husband and wife to their respective attorneys, which specifically described the property, was recorded in Davidson County on October 15, 1981. This of course was only notice that the attorneys were authorized to execute instruments on behalf of their clients and in our view could not, by any stretch of the imagination, be construed to be a notice *lis pendens*.

The most difficult question to be resolved in this case is the interest of Mr. Knobler which is subject to the judgment lien.

The Bank argues that once the bonds of matrimony are severed, tenants by the entirety become tenants in common, and cites three cases as authority. We do not believe any of the cases are controlling. In *Clouse v. Clouse*, 185 Tenn. 666, 207 S.W.2d 576 (1948), the Court held that because a Michigan divorce decree could not affect title to property in Tennessee, a decree which attempted to do so was void, and the parties therefore owned the property as tenants in common. In *Youree v. Youree*, 217 Tenn. 53, 394 S.W.2d 869 (1965), the Court held that when a decree is silent as to real estate formerly owned as tenants by the entirety the parties become tenants in common. The third case, *White v. Watson*, 571 S.W.2d 493 (Tenn.App. 1978), is speaking in the abstract in stating that upon divorce former tenants by the entirety become tenants in common. We think it is clear that in making the statement the Court assumed the divorce decree did not otherwise dispose of the property.

■ In the case at bar, however, the Court specifically reserved the question of the division of the property. Moreover, in our view the divorce did not become final until the time for Mr. Knobler to appeal had expired. Under the unique facts of this case we believe it appropriate for the judgment lien to attach to Mr. Knobler's interest as a tenant by the entirety in the Belle Forest property, and to his entire interest in the Lealand Avenue property. We think the foregoing resolution particularly appropriate when we remember that the Bank's lien is attaching to the identical

2. It is even questionable this order would be valid as to third parties without notice unless it was recorded in the Register's Office for Davidson County. See T.C.A. 66–26–101 (Effect of instruments with or without registration).

3. In the case at bar the complaint has the infirmity of not describing the Davidson County property with particularity, the description being merely the street adjoining the property without naming the county or civil district.

interest it would have had a divorce not been granted. To put it another way, we do not believe the Bank should be rewarded because of the parties' domestic difficulties.

Under the agreement of the parties as to the Belle Forest property and under the request as contained in the Bank's brief as to the Lealand Avenue property, the Bank's lien will attach to the proceeds of the sales.

One final matter needs to be addressed. Counsel representing Mr. Knobler, who, for the most part acted at the instance of the Court in disposing of the property after Mr. Knobler had terminated his employment, contends that he is entitled to the lien provided in T.C.A. 23–2–102,[4] and because such a lien attaches from the filing of the suit it has precedence over the Bank's judgment lien. First, we note the statute speaks of counsel of record who began a suit and extends to the plaintiff's right of action. In the present case the suit was initiated by Mrs. Knobler and no counter-complaint was filed by Mr. Knobler. Moreover, counsel to whom the attorney fee was awarded was not counsel for Mr. Knobler until sometime after the divorce was granted. We note that the brief of counsel refers to an order of February 5, 1982, impressing a lien in his favor. However, we are unable to find such an order in the record, and even if such an order was entered it does not appear that it was recorded in the Register's Office for Davidson County.

██ We do not mean to imply that counsel has not earned the fee which the Court awarded, or that it would be improper to tax it a part of the costs or pay it out of the funds which might be remaining after the Bank's lien had been satisfied. We simply hold that counsel for Mr. Knobler has no claim on the funds which would have priority over the Bank's claim.

In conclusion, it would seem appropriate, in view of the apparent affluence Mr. Kno-

bler presently enjoys, that the Trial Court entertain a petition to increase alimony to compensate Mrs. Knobler for any loss occasioned by Mr. Knobler's transaction with the Bank.

For the foregoing reasons the Trial Court is affirmed in part, reversed in part, and the cause remanded for such further proceedings as may be necessary. The costs of appeal are adjudged one-half against Mrs. Knobler and one-half against the Bank and its surety.

TODD, P.J.(M.S.), and CANTRELL, J., concur.

---

**4.** *23–2–102. Lien on right of action.*—Attorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit.