IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2002 Session

## STATE OF TENNESSEE v. FRANK MICHAEL VUKELICH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2423     Cheryl Blackburn, Judge**

**No. M2001-01184-CCA-R3-CO - Filed October 7, 2002**

The defendant appeals the order of the Davidson County Criminal Court directing the clerk of that court to apply the defendant's funds, which were obtained through an attachment directed to the Metro Trustee, to the defendant's fines and court costs. We conclude the state improperly sought to enjoin enforcement of the chancery court's order relating to the distribution of these funds by seeking an injunction in the criminal court. We further conclude the funds were held by the Metro Trustee in *custodia legis* for the chancery court and were not subject to attachment. Therefore, we reverse the judgment of the criminal court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. DAVID G. HAYES, J., filed a dissenting opinion.

Peter J. Strianse and Kimberly Shawn Hodde, Nashville, Tennessee, for the appellant, Frank Michael Vukelich.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### PROCEDURAL HISTORY

The issue before this court is the climax of a multitude of proceedings held before an array of judicial forums which resulted in a complex body of rulings, with the ultimate rulings of the chancery court and criminal court being contradictory. An explanation of this convoluted procedural history is mandatory to the understanding of the question before this court.

On March 23, 1998, the Drug Task Force of the 20th Judicial District seized and liquidated the defendant's mutual fund account pursuant to a probable cause forfeiture warrant issued by the Davidson County Circuit Court. Proceeds of approximately $102,000 were deposited with the Metro Trustee in an escrow account maintained for the drug task force. In April 1998, the defendant filed a claim with the Department of Safety to contest the seizure. On May 28, 1998, the Davidson County Circuit Court conducted a hearing on the forfeiture warrant. The defendant's mother testified the defendant's grandfather purchased the mutual fund for the defendant when the defendant was a child. At the close of the hearing, Drug Task Force Director and Assistant District Attorney General John C. Zimmerman conceded that if the evidence established the mutual fund was a gift from the defendant's grandfather, it would not be subject to forfeiture. The following day, General Zimmerman notified the Department of Safety by letter that the mutual fund account was derived from a gift from the defendant's grandfather rather than from drug activity and requested that an appropriate order be entered. On June 9, 1998, the Department of Safety entered an administrative order providing the funds were to be returned to the defendant.

However, the funds remained in the custody of the Metro Trustee while the defendant appealed the Department of Safety's order to the Davidson County Chancery Court pursuant to Tennessee Code Annotated section 40-33-213. The defendant's appeal sought an award of damages from the state for taxes which resulted from the liquidation of the mutual fund. On February 9, 1999, the Davidson County Chancery Court entered an "Agreed Order of Remand," signed by an assistant state attorney general, defendant's counsel, and the chancellor, which modified the administrative order issued by the Department of Safety to delete a paragraph which mutually released the defendant and the state from claims of injuries or damages stemming from the seizure of the mutual fund account. The portion of the Department of Safety order requiring the state to return the funds to the defendant was not affected by the agreed order. Nevertheless, for whatever reason, the defendant's funds remained with the Metro Trustee.[1] Apparently, a copy of the February 9th agreed order as signed by the chancellor was not received by the state attorney general's office until April 28, 1999. Assistant District Attorney General Zimmerman testified his office did not receive the chancery court's order until May 6, 1999.

Between the date of the entry of the Department of Safety's order providing for the return of the funds to the defendant (June 9, 1998) and the date of entry of the chancery court's agreed order (February 9, 1999), the Criminal Court of Davidson County on January 22, 1999, entered a judgment convicting the defendant of conspiracy to deliver over 700 pounds of marijuana, multiple counts of conspiracy to commit money laundering, and money laundering, which assessed a fine of $150,000 plus court costs, for a total judgment of $188,549.56.

---

[1]The defendant alleges that his counsel made numerous attempts to obtain the funds from the Trustee's office following the entry of the chancery court order, and that the Assistant District Attorney General interfered with these efforts. If this is true, this reinforces defendant's position in this appeal. However, the record before us is insufficient for us to address the merits of this allegation. We, therefore, emphasize that we are making no determinations with regard to this allegation.

On May 7, 1999, the day after General Zimmerman received a copy of the agreed chancery court order, he requested the Davidson County Criminal Court Clerk to issue a writ of *fieri facias* upon the defendant's funds held by the Metro Trustee. The writ was delivered to the Trustee that day, and, on July 22, 1999, the funds were transferred to the criminal court clerk.

On August 10, 1999, the Davidson County Chancery Court conducted a show cause hearing upon defendant's motion to determine why the Department of Safety had not restored the funds to the defendant in accordance with the chancery court's February 9th agreed order. The transcript of that proceeding is not before this court. Nevertheless, General Zimmerman alleged in his criminal court pleadings that the chancellor stated at the hearing that the funds should be disbursed to the defendant with an order to be filed "within a couple of days." On August 13, 1999, at 6:15 p.m., the chancery court issued its written order, finding the department had failed to show good cause for not restoring the funds to the defendant as required by the February 9th order, requiring the funds be disbursed to the defendant, and declaring the criminal court's writ of *fieri facias* to be ineffective. No appeal was taken by the state relating to the August 13th chancery court order; accordingly, no stay of execution was sought. On the same day at 3:21 p.m., three hours before the chancery court order was filed but three days after the chancellor's oral ruling, General Zimmerman, rather than appealing the chancery court order, petitioned the Davidson County Criminal Court to issue an injunction preventing the defendant or any person on his behalf from receiving these funds. He further sought the issuance of another writ of *fieri facias*. The criminal court issued a temporary restraining order, and, on April 12, 2001, issued an order directing the criminal court clerk to apply the defendant's funds to the fines and court costs. The criminal court held that the funds were not subject to the chancery court's decree when the writ of *fieri facias* was executed, and that the criminal court had jurisdiction and authority to issue the writ. The defendant timely appealed the criminal court's order to this court.

## I. INJUNCTION PREVENTING ENFORCEMENT OF CHANCERY COURT'S ORDER

We would first note that the essence of the petition filed by the state in the Davidson County Criminal Court was to enjoin the enforcement of the chancery court's order of August 13, 1999. Though the petition is couched in terms requesting the court restrain the defendant from taking action to receive the funds then held by the criminal court clerk, it is clear that the effect of such an injunction would be to prevent the chancery court order from taking effect.

A party may seek judicial review of a ruling in a forfeiture proceeding in either the circuit court or chancery court of Davidson County. Tenn. Code Ann. § 40-33-213(c). The defendant elected to file his appeal of the Department of Safety's order in the Davidson County Chancery Court, thus granting it jurisdiction over the appeal and the funds seized by the state pursuant to the forfeiture statute. *See* Tenn. Code Ann. §§ 40-33-201S214. When a court of competent jurisdiction acquires subject matter jurisdiction over a matter, its authority continues and is subject only to appellate authority until the court has finally and completely disposed of the case. Haley v. Doochin,

186 Tenn. 137, 208 S.W.2d 756, 757 (1948). No court with concurrent jurisdiction may interfere with its actions. King of Clubs, Inc. v. Gibbons, 9 S.W.3d 796, 799 (Tenn. Ct. App. 1999).

Even if a second court has concurrent jurisdiction over a matter that is the subject of a suit in a court of co-ordinate authority, the second court is without authority to enjoin either the proceedings in the first court or to enjoin the parties from pursuing the litigation. *Id.* at 799. The Davidson County Criminal Court had no authority to issue an order which effectively prevented the enforcement of the order of the Davidson County Chancery Court.

It is apparent to this court that, for whatever reason, the chancery court's agreed order of February 9, 1999, was not timely followed. That agreed order, having been signed by the chancellor, counsel for the state, and counsel for the defendant, was effective February 9th, the date it was stamped filed by the clerk. *See* Tenn. R. Civ. P. 58(1). The state makes no argument to the contrary. The fact that the state attorney may not have actually received a copy until April 28th and General Zimmerman may not have received a copy until May 6th did not authorize the state on May 7th to seek an attachment, almost three months after the entry of the agreed order.

The chancellor's order directed the Metro Trustee to disburse the funds to the defendant. Conversely, the criminal court's writ directed the Trustee to transfer the funds to the criminal court clerk. Therefore, the Trustee was faced with conflicting directives from two separate courts with co-ordinate authority. This is an evil that the concurrent jurisdiction doctrine is designed to prevent.

When the order of the chancery court was not followed, the chancery court had jurisdiction to determine if the state was in contempt of its order. Further, it was within its jurisdiction to issue a second order directing the disbursal of the funds in accordance with the first order. Thus, its order was not void. If the state was aggrieved by the chancery court's order, its remedy was to seek an appeal to the Court of Appeals. *See* King of Clubs, Inc., 9 S.W.3d at 799; Tenn. R. App. P. 3(a). It is not for this court to decide whether the chancery court's order could have been successfully challenged on appeal. If the chancery court had jurisdiction, as we so conclude, the state's remedy was an appeal of that order.

## II. *CUSTODIA LEGIS*

We now address whether the funds held by the Metro Trustee were the proper subject of the chancery court's jurisdiction. Property is in *custodia legis* if it has been lawfully taken by virtue of legal process. Knobler v. Knobler, 697 S.W.2d 583, 586 (Tenn. Ct. App. 1985). The doctrine of *custodia legis* mandates that when a court has custody of property through its officer or representative, such as a clerk, who holds the property subject to the orders of the court, another court should not interfere with the property through execution or attachment. Massey v. Holmes, 189 Tenn. 677, 227 S.W.2d 25, 26 (1950); *see* Jerry Ray v. State of Tennessee, No. M1999-00237-COA-R3-CV, 2000 Tenn. App. LEXIS 250, at *8 (Tenn. Ct. App. Apr. 18, 2000, at Nashville). The reasoning behind this doctrine is that the custodian of the property is the hand of the court whose

-4-

possession is the possession of the court; to interfere is to invade the jurisdiction of the court itself. Massey, 227 S.W.2d at 26.

In the instant case, the Metro Trustee gained possession of the defendant's funds when they were placed into his hands pursuant to a forfeiture proceeding initiated by a forfeiture warrant. *See* Tenn. Code Ann. §§ 40-33-204, -211(a). The Trustee retained the funds while the defendant appealed the forfeiture action to the Department of Safety and then to the Davidson County Chancery Court. Therefore, the funds were held in *custodia legis*, or in the custody of the law, because they were lawfully taken and held by virtue of legal process. When the funds were initially deposited with the Trustee, they were held subject to the orders of the circuit or criminal courts. Tenn. Code Ann. § 53-11-451(d). However, once the defendant sought relief from the chancery court, the chancery court had jurisdiction over the funds. Further, by entering into an agreed order, signed by both the state and the defendant, which provided the funds would be returned to the defendant, the state conceded the chancery court's jurisdiction. Therefore, the Trustee held the funds as an agent or representative of the chancery court subject to its order that the funds be disbursed to the defendant.

The state implicitly argues the doctrine of *custodia legis* applies only to funds in the hands of a court clerk. However, the doctrine is not limited to clerks, but also applies to others holding property subject to a court order. *See* 21 C.J.S. **Courts** §189 (1990) (noting *custodia legis* includes funds held by a court's officer or representative, such as an executor or administrator, sheriff, or receiver) (citations omitted); William E. Sharp, Jr. v. A.G. Burkhart, Jr., 1984 Tenn. App. LEXIS 3197, at *8 (Tenn. Ct. App. Oct. 5, 1984, at Jackson) (attorney who held property pursuant to a court order held it in *custodia legis).* Although the Trustee was not the clerk and master of the chancery court, he, nonetheless, held the defendant's funds subject to that court's authority and orders; therefore, he possessed the funds in *custodia legis.*

The state also argues the Tennessee Supreme Court's decision in the case of Tucker v. Atkinson, 20 Tenn. 300 (1839), is applicable to the instant case. In Tucker, a sheriff sold a debtor's real property pursuant to an execution. The amount of the purchase price exceeded the amount of the execution, which created a surplus in the hands of the sheriff. A second creditor sought to attach the surplus. The state supreme court held that since the proceeds from the sale were sufficient to allow the sheriff to satisfy the initial execution, it would not obstruct justice to allow the second creditor to attach the surplus. *Id.* at 301-02. To the extent this 1839 decision may still have continuing vitality, we note the situation of the Trustee in the instant case is distinguishable from the situation of the sheriff in Tucker. Unlike the sheriff, the Trustee could not satisfy both the order of the chancery court, which required him to return the funds to the defendant, and the criminal court's writ of *fieri facias*, which required the funds be transferred to the criminal court clerk. Therefore, the Tucker decision is not controlling.

-5-

## III. THE CRIMINAL COURT'S AUTHORITY TO EXECUTE ITS JUDGMENT

In some respects, these various proceedings appear to be little more than a "cat-and-mouse" game. However, the state is obviously concerned that if the defendant ever receives the funds, it will be hampered in its collection efforts. In this regard, we note that while the criminal court was precluded from attaching the funds while they were in the custody of the chancery court, the state is otherwise correct in arguing that the Davidson County Criminal Court has authority to enforce its judgments by execution. *See* Tenn. Code Ann. § 26-1-103. Though the funds may not be attached while in the custody of the chancery court, the funds themselves are not exempt from execution. *See* Brashears v. Hartsook, 450 S.W.2d 7, 10 (Tenn. 1969). We know of no authority preventing the state from attaching the funds at the time the funds are returned to the defendant in accordance with the chancery court's order. Similarly, had the February 9th chancery court order been followed and the Trustee disbursed the funds to the defendant at that time, we see nothing that would have barred the state from taking the same action.

The state finally argues the chancery court improperly declared the criminal court's writ of *fieri facias* was ineffective. As we previously stated, the chancery court maintained *custodia legis* over the funds, and the state failed to seek an appeal of the chancellor's order with the Court of Appeals. This argument is without merit.

## CONCLUSION

The criminal court acted without authority in attaching the funds held by the Trustee in *custodia legis* for the chancery court and by issuing an order hindering the enforcement of the order of the chancery court. Therefore, we remand this matter for entry of an order restoring the defendant's funds to the Metro Trustee so that the Trustee and the Department of Safety may comply with the order of the Davidson County Chancery Court to return the funds to the defendant.

_____
JOE G. RILEY, JUDGE